UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07591-MRP -RZ | Date | January 4, 2012 |
|---|---|---|---|
| Title | NeuroGrafix et al v. Regents of the University of California | | |

| Present: The Honorable | Mariana R. Pfaelzer, Senior U.S. District Judge |
|---|---|
| Courtroom Clerk: | Cynthia Salyer |
| Court Reporter: | None. |
| Attorneys Present for Plaintiffs: | None. |
| Attorneys Present for Defendants: | None. |

**Proceedings:** **IN CHAMBERS**

On November 14, 2011, Defendant The Regents of the University of California ("the Regents") filed a motion to dismiss Plaintiffs NeuroGrafix, Neurography Institute Medical Associates, Inc. ("NIMA"), and Imaged-Based Surgicenter ("IBSC") on the grounds that those parties lacked constitutional standing. ECF No. 16. Prior to filing this lawsuit, NeuroGrafix held an exclusive license to U.S. Patent No. 5,560,360. However, on the day that plaintiffs filed this lawsuit, NeuroGrafix, NIMA, and IBSC entered into agreements dividing NeuroGrafix's exclusive rights in the '360 patent. The Regents contend that those agreements destroyed NeuroGrafix's status as an exclusive licensee and failed to give NIMA or IBSC exclusive licensee status. The Court disagrees and **DENIES** the motion to dismiss.

In order for NeuroGrafix, NIMA, and IBSC to have standing to sue, they must have exclusionary rights. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007). Those exclusionary rights can be in limited fields of use. *See A123 Systems, Inc., v. Hydro-Quebec*, 626 F.3d 1213, 1217 (Fed. Cir. 2010) (upholding a district court determination that a party was a field of use licensee); *Int. Gamco, Inc., v. Multimedia Games, Inc.*, 504 F.3d 1273, 1278 (Fed. Cir. 2007) (noting that an exclusive field of use licensee may sue only if joined with the patent holder). Here, Washington Research Foundation, the patent owner, has been joined in the lawsuit.

In California, a court looks to the outward expressions of an agreement to identify the manifestations of intent, as they existed at the time of contracting. Cal. Civ. Code § 1636; *TRB Investments, Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (Cal. 2006). In this case, two agreements created the parties' rights. The first is an agreement between NeuroGrafix and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:11-cv-07591-MRP -RZ | Date | January 4, 2012 |
| Title | NeuroGrafix et al v. Regents of the University of California | | |

NIMA and the second is an agreement between NIMA and IBSC. NeuroGrafix's president is Dr. Aaron Filler, the inventor of the '360 patent. Dr. Filler is also the designated representative for NIMA and the president of IBSC. Dr. Filler signed both agreements as the representative for all three companies on September 14, 2011—the same day the parties filed this lawsuit. The NeuroGrafix-NIMA agreement granted to NIMA an exclusive license in the '360 patent. NIMA then granted back to NeuroGrafix an exclusive license in the field of use of non-human medicine. The NIMA-IBSC agreement granted to IBSC an exclusive license in the field of use of surgical medicine.

The language in the NeuroGrafix-NIMA agreement evidences the parties' intent to grant NIMA an exclusive license. The agreement states "Licensor grants to Licensee an exclusive license to make, have made, use, import, sell, offer to sell, and have sold Licensed Products under the Patent Rights, so long as Licensee retains exclusive rights under this License Agreement." Chang Decl. Ex. A at ¶ 2.1, ECF No. 21. The same paragraph states, "The exclusive right . . . reverts to [NeuroGrafix] if a court finds that NIMA does not have standing to sue or the license has expired or been terminated." *Id.* The Regents ignore these provisions and instead focus on a different sentence in that paragraph as evidence that NIMA had non-exclusive rights. That sentence states, "[s]ubject to Licensor's right to grant licenses and sublicenses, Licensor also grants to Licensee the right to issue sublicenses." *Id.* At best, this sentence creates some ambiguity in the agreement.

The Regents claim that the Court may look to the NIMA-IBSC agreement to clarify the ambiguity. They contend that the fact that the NIMA-IBSC agreement contains an explicit promise not to grant additional licenses and that the NeuroGrafix-NIMA agreement does not contain that promise means that NeuroGrafix retains those rights. Further, the Regents argue that the agreements create overlapping rights between NeuroGrafix and IBSC in non-human surgical medicine such that the parties cannot be exclusive licensees.

Assuming that the Court could look outside the four corners to decide this matter, it is apparent that such an inquiry would not support the Regents' argument. The circumstances reveal that the three parties, utilizing the same representative, signed the two agreements on the same day for what appears to be the purpose of litigation. In order to achieve their goals in this litigation, the parties desired to divide the field of use rights to the '360 patent and create exclusive licenses. Those parties are now before this Court all arguing for the same interpretation of the agreements—that NeuroGrafix has an exclusive license in the field of use of non-human, non-surgical medicine, IBSC has an exclusive license in the field of use of human, surgical medicine, and NIMA has an exclusive license in the field of use of human, non-surgical medicine. Nothing on the face of the documents indicate that the Regents' interpretation is correct or the Regents' interpretation should override the contracting parties' agreed interpretation. Instead, the manifestations indicate that the parties intended to divide

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07591-MRP -RZ | Date | January 4, 2012 |
|---|---|---|---|
| Title | NeuroGrafix et al v. Regents of the University of California | | |

the field of use rights such that each party had an exclusive license.

Because the circumstances surrounding the signing of the agreements indicate that the parties intended to divide the rights, the Court finds that the agreements created field of use exclusive licenses. Therefore, the parties have standing to sue. The motion is **DENIED**. Should legitimate doubts arise about the plaintiffs' agreements in the future, the Regents may bring an appropriate motion.

IT IS SO ORDERED.

:   00

Initials of Deputy Clerk