CAROLYN CHANG (CSB NO. 217933)
cchang@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041
Telephone:   (650) 988-8500
Facsimile:    (650) 938-5200

Attorneys for Defendant
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Jennifer A. Sklenar (CSB NO. 200434)
ARNOLD & PORTER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone:   (213) 243-4000
Facsimile:    (213) 243-4199

Attorneys for Intervenor-Plaintiff
GENERAL ELECTRIC COMPANY

* Additional counsel listed on signature page

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NEUROGRAFIX, a California corporation; NEUROGRAPHY INSTITUTE MEDICAL ASSOCIATES, INC., a California corporation; IMAGE-BASED SURGICENTER, a California corporation; WASHINGTON RESEARCH FOUNDATION, a not-for-profit Washington corporation,<br><br>Plaintiffs,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant. | Case No. 11-CV-07591 MRP (RZx)<br><br>**DEFENDANTS' INVALIDITY CONTENTIONS**<br><br>Judge:  The Hon. Mariana R. Pfaelzer |

GENERAL ELECTRIC COMPANY,

    Intervenor-Plaintiff,

  v.

NEUROGRAFIX, a California corporation; NEUROGRAPHY INSTITUTE MEDICAL ASSOCIATES, INC., a California corporation; IMAGE-BASED SURGICENTER, a California corporation; WASHINGTON RESEARCH FOUNDATION, a not-for-profit Washington corporation,

    Defendants.

DEFENDANTS' INVALIDITY CONTENTIONS     CASE NO. 11-CV-07591 MRP (RZX)

1    In accordance with the Court's orders during the February 28, 2012 Case
2 Management Conference and the Court's April 3, 2012 Minute Order (Dkt. No.
3 58), Defendant The Regents of the University of California and Plaintiff-Intervenor
4 General Electric Company (collectively, "Defendants") provide their invalidity
5 contentions as to the claims from U.S. Patent No. 5,560,360 ("'360 Patent")
6 asserted by Plaintiffs NeuroGrafix, Neurography Institute Medical Associates, Inc.,
7 Image-Based Surgicenter Corporation and Washington Research Foundation
8 (collectively, "Plaintiffs").
9    Defendants' invalidity contentions are made solely for the purpose of this
10 action.  Discovery in this matter has not yet begun.  There has been no expert
11 discovery and the Court has yet to issue a claim construction in this action.
12 Defendants reserve all of their rights to supplement, amend, and modify the
13 contentions made herein with respect to the claims of the '360 Patent consistent
14 with applicable local rules, orders of the Court, or agreements of the parties,
15 including based on fact discovery, expert discovery, and claim constructions
16 ordered by the Court.  Defendants' invalidity contentions have been prepared based
17 on Plaintiffs' apparent interpretation of the claims as they have asserted those
18 claims in their March 9, 2012 infringement contentions and March 12, 2012
19 amended infringement contentions.  However, because Plaintiffs' infringement
20 contentions were vague and conclusory and failed to give specific notice of the
21 accused feature or step that purportedly corresponds to each claim limitation,
22 Defendants have not fully been put on notice of Plaintiffs' position as to the scope
23 of the claims.  To the extent that Plaintiffs' claim interpretation and proposed
24 constructions can be understood, Defendants intend to dispute them, and nothing in
25 these contentions should be understood as an acquiescence to, or agreement with,
26 any apparent interpretation of the claims as Plaintiffs have asserted those claims in
27 their March 9, 2012 infringement contentions and March 12, 2012 amended
28 infringement contentions. Citations to particular excerpts are exemplary in nature,

and are not exhaustive of the evidentiary support.

Plaintiffs NeuroGrafix and Washington Research Foundation accuse Defendant The Regents of the University of California ("The Regents") of infringing claims 36, 37, 39, 40, 41, 42, 43, 44, 46, 47, 49, 50, 51, 52, 53, 54, 63, 64, 65, and 66 of the '360 Patent ("the Asserted '360 Patent Claims") by using, selling, offering to sell or licensing some unspecified configurations of hardware, software or methods, or by contributing to or inducing infringement by others in connection with the use of that hardware, software or methods (collectively the products and methods are referred to herein as "the Accused Instrumentalities"). *See* NeuroGrafix's March 9, 2012 Infringement Contentions; March 12, 2012 Amended Infringement Contentions.  To the extent that the Asserted '360 Patent Claims are construed to cover one or more of the Accused Instrumentalities, they are invalid for at least the following reasons.[1]

## I.     INVALIDITY BASED ON 35 U.S.C. §§ 102, 103

The Asserted '360 Patent Claims are invalid under 35 U.S.C. § 102.  The charts in Exhibits A-1 - A-17 provide reasons why each of the claims is invalid, including the identification of each item of prior art that anticipates each claim and where specifically in each item of prior art each limitation of each claim alleged to be invalid is found.  The Asserted '360 Patent Claims also are invalid under 35 U.S.C. § 103.  The charts in Exhibits A-1 - A-17 provide reasons why each of claims is invalid, including the identification of each item of prior art that renders it obvious, an identification of any combinations of prior art showing obviousness, and why the prior art renders it obvious.  Citations to particular excerpts are exemplary in nature, and are not exhaustive of the evidentiary support.  Where a

---

[1] In addition to the reasons identified herein, the Asserted '360 Patent Claims are invalid for the reasons identified in Siemens's Invalidity Contentions and accompanying exhibits (*see Neurografix v. Siemens Medical Solutions, Inc.*, Case No. 10-CV-1990 MRP (RZx), Dkt. 95), which Defendants incorporate herein by reference.

particular figure is cited from a prior art reference, the citation should be understood to encompass the caption and description of the figure and any text relating to or discussing the figure.  Conversely, where particular text referring to a figure is cited, the citations should be understood to include the figure as well. Defendants reserve the right to update and supplement these invalidity contentions consistent with applicable local rules, orders of the Court, or agreements of the parties, including based on fact discovery, expert discovery, and claim constructions ordered by the Court.

Each of the references listed in the claims charts (*see* Exhibits A-1 - A-17) is prior art under 35 U.S.C. § 102(a) and/or 102(b).  In addition to the specific obviousness combinations referenced in the charts, most of the claim limitations and combinations of claim limitations, as asserted by Plaintiffs, are disclosed or taught in widely used prior art text books in the field of magnetic resonance imaging.  For instance, Higgins et al., Magnetic Resonance Imaging of the Body (2d ed. 1992) includes extensive discussion of equipment, pulse sequences, and methods that were standard at that time, including for instance T2-weighted pulse sequences, diffusion-weighted imaging, 3D imaging, fat suppression, nerve imaging, and imaging of peripheral nerves, and Defendants may rely on these references as teaching or motivating the various combinations of claim limitations. *See also* Allen D. Elster, Magnetic Resonance Imaging (1986); Murray Reicher & Leland Kellerhouse, MRI of the Wrist and Hand (1990).  Indeed, with respect to many of the limitations in the claims, Plaintiffs assert in their infringement contentions that the limitations are merely "conventional MRI functionality."

In addition to the reference discussed and cited in the charts below, on information and belief, discovery will show that the Asserted '360 Patent Claims are invalid because prior to the named inventors' alleged invention of the subject matter of these claims, as asserted by Plaintiffs, the claimed inventions were made in this country by another inventor who had not abandoned, suppressed, or

concealed it.  In particular, the alleged inventions claimed in the Asserted '360 Patent Claims, as asserted by Plaintiffs, were invented by Peter J. Basser, Denise Le Bihan, James Mattiello, and/or Philippe Douek.  Their work is prior art under 35 U.S.C. § 102(g)(2).  Further in light of that work by Peter J. Basser, Denise Le Bihan, James Mattiello, and/or Philippe Douek, discovery may show that the Asserted '360 Patent Claims, as asserted by Plaintiffs, may be invalid under 35 U.S.C. §§ 102(a) and/or 102(f).

Copies of relevant portions of each of the references cited herein have been produced either previously or concurrently herewith.  (*See* DEF0000001-DEF0003844.)

## II.     INVALIDITY BASED ON 35 U.S.C. § 112

The Asserted '360 Patent Claims are also invalid based on indefiniteness under 35 U.S.C. § 112, ¶ 2, and/or lack of enablement and/or written description under 35 U.S.C. § 112, ¶ 1.

### A.     Lack of Enablement and Written Description Under 35 U.S.C. § 112, ¶ 1

The Asserted '360 Patent Claims are invalid because the patent specification does not include sufficient written description of the alleged invention, and the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is mostly nearly connected, to make and use the alleged invention(s).  The patent fails to provide an enabling disclosure and an adequate written description of the asserted claims to the full extent of the claim scope apparently asserted and as apparently applied to the accused products by Plaintiffs in their infringement contentions.

To the extent that the Asserted '360 Patent Claims are construed to cover one or more of the Accused Instrumentalities, they are invalid under 35 U.S.C. § 112, ¶ 1 in that the following claim limitations, as asserted by Plaintiffs to encompass

the Accused Instrumentalities, are not supported by the written description in the specification and are not enabled so that those skilled in the art could make and use the full scope of the claimed invention without undue experimentation:

- "predetermined arrangement of [diffusion-weighted] gradients" (claim 36)
- "selected structure" (claims 36, 37, 49, 50, 51, 52, 54, 64)
- "vector processing said outputs to generate data representative of anisotropic diffusion exhibited by said selected structure in the region, regardless of the alignment of said diffusion-weighted gradients with respect to the orientation of said selected structure" (claim 36)
- "processing said data representative of anisotropic diffusion to generate a data set describing the shape and position of said selected structure in the region, said data set distinguishing said selected structure from other structures in the region that do not exhibit diffusion anisotropy" (claim 36)
- "wherein said data set describing the shape and position of said [neural tissue]/[selected structure] describes the shape and position of a selected cross section of said [neural tissue]/[selected structure], and the steps used to generate said data set are repeated to generate additional data sets describing different cross sections of said [neural tissue]/[selected structure], and a further data set that describes the three dimensional shape and position of a segment of said [neural tissue']/[selected structure] is generated by steps" (claims 39, 49)
- "wherein said data set describes the shape and position of a selected cross section of said neural tissue, and the steps used to generate said data set are repeated to generate additional data sets describing different cross sections of said neural tissue, and a further data set that describes the three dimensional shape and position of a segment of said neural tissue is generated by steps" (claim 46)
- "analyzing the data representative of anisotropic diffusion to determine how to relate said data set and said additional data sets describing the shape and position of cross sections of said [neural tissue]/[selected structure]" (claims 39, 46, 49)
- "based upon the results of said step of analyzing the data representative of anisotropic diffusion, combining said data set and said additional data sets to generate said further data set that describes the three dimensional shape and position of the segment of said [neural tissue]/[selected structure], thereby [enabling]/[allowing] [a]/[the] three dimensional shape and position of [a] curved [structure exhibiting anistropic diffusion]/[neural tissue] to be described" (claim 39, 46, 49)
- "wherein said step of analyzing the data representative of anisotropic diffusion includes determining an effective direction of the anisotropic diffusion exhibited by said neural tissue in each of said selected and different cross sections" (claims 40, 47)

- "wherein said predetermined arrangement of gradients includes first, second, and third orthogonal gradients, and said data representative of anisotropic diffusion include a description of an effective vector representative of the anisotropic diffusion exhibited by said [neural tissue]/[selected structure]" (claims 41, 50)

- "wherein said data set describing the shape and position of said neural tissue is based upon the length of said effective vector" (claim 42)

- "wherein said data set describing the shape and position of said neural tissue is based upon an angle describing in part the direction of said effective vector" (claim 44)

- "wherein said data set describing the shape and position of said selected structure describes the shape and position of a selected cross section of said selected structure, and the steps used to generate said data set are repeated to generate additional data sets describing different cross sections of said selected structure, and a further data set that describes the three dimensional shape and position of a segment of said selected structure is generated by steps including" (claim 49)

- "predetermined arrangement of diffusion weighted magnetic gradients chosen to: i) emphasize a selected structure in the region exhibiting diffusion anisotropy in a particular direction; and ii) suppress other structures in the region exhibiting diffusion anisotropy in directions different from said particular direction" (claims 51, 54)

- "said excitation and output arrangement means further for sensing a resonant response of the region to the diffusion-weighted gradient and producing an output indicative of the resonant response, for each of said diffusion weighted gradients" (claim 54)

- "for each of said diffusion-weighted gradients, sensing a resonant response of the region to the diffusion weighted gradient and producing an output indicative of the resonant response" (claim 51)

- "processing said outputs to generate data representative of the diffusion anisotropy of the selected structure" (claim 51)

- "wherein said data representative of the diffusion anisotropy of the selected structure is processed to produce a data set that describes the shape and position of the selected structure" (claim 52)

- "processor means coupled to said excitation and output arrangement means for processing said outputs to generate data representative of the diffusion anisotropy of the selected structure" (claim 54)

- "processor means is further for processing said data representative of the diffusion anisotropy of the selected structure to produce a data set that describes the shape and position of the selected structure" (claim 64)

The claims of the '360 Patent generally are directed to methods and apparatuses for imaging certain structures and tissues, for example nerves,

including alleged improved methods and apparatuses for viewing certain nerves and types of structures. *See, e.g.*, '360 Patent col. 1, ll. 20-37. The specification of the '360 Patent acknowledges that many methods and apparatuses for imaging nerves were known in the art and notes purported drawbacks of the prior art, including the inability to adequately image certain nerves. *See, e.g.*, *id.* col. 3, l. 24 - col. 5, l. 65. In addition, during prosecution of the application which eventually issued as the '360 Patent, the applicants distinguished their invention over the prior art because, according to the applicants, it allowed for improved imaging. *See, e.g.*, 11/17/1994 Applicants' Response, at 10-15. The specification of the '360 Patent and the claims purport to offer a solution to the draw-backs in the prior art, through the use of the claimed methods and apparatuses. The Asserted '360 Patent Claims broadly claim this supposed improved result. The '360 Patent specification, however, fails to provide sufficient teaching of such methods and apparatuses that would result in the claimed improvements or results. Indeed, the specification of the '360 Patent does not sufficiently describe how to achieve or perform the specifically alleged improvements, nor which specific methods to select that would result in such improvements. The '360 Patent therefore, at most, points to a desired improvement and suggests that there may be a theoretical way to achieve that desired improvement. It provides, at most, a starting point from which one of ordinary skill in the art might perform further research in order to practice the claimed invention and might achieve the claimed results. The claims are broader than the enablement as taught in the specification. Because of these deficiencies, the disclosure also does not reasonably convey to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. Accordingly, the Asserted '360 Patent Claims are invalid because they are not supported by the written description in the specification and are not enabled so that those skilled in the art could make and use the full scope of the claimed invention without undue experimentation. All claims that depend from the independent claims are invalid

for the same reason.

For at least the above reasons, the Asserted '360 Patent Claims are invalid under 35 U.S.C. § 112, ¶ 1 for failing to comply with the enablement and written description requirements.

### B.     Indefiniteness Under 35 U.S.C. § 112, ¶ 2

Certain of the Asserted '360 Patent Claims are also invalid under 35 U.S.C. § 112, ¶ 2 because they include claim limitations that are indefinite for failing to particularly point out and distinctly claim the subject matter which Applicants regard as their invention.  The Court has previously held that the "processing" step in claim 36(e) and the "analyzing" and "combining" steps in claims 39, 46, and 49 are indefinite for failure to disclose sufficient structure.  *See Neurografix v. Siemens Medical Solutions, Inc.*, Case No. 10-CV-1990 MRP (RZx), Dkt. 114 at 27-28. Thus, they are invalid.  All claims that depend from such independent claims are invalid for the same reason.  In addition, Asserted '360 Patent Claims with the following limitation are indefinite:

- "analyzing the data representative of anisotropic diffusion to determine how to relate said data set and said additional data sets describing the shape and position of cross sections of said [neural tissue]/[selected structure]" (claims 39, 46, 49)

This claim limitation refers to analytical steps merely suggested in the patent specification, but not explained so as to create the claimed result.  Moreover, the limitation does not distinguish the analyzing techniques in the prior art from that which is claimed and therefore one skilled in the art could not know what techniques would be infringing.  Accordingly, one of skill in the art could not reasonably discern the boundaries of the claims that include this limitation and, thus, the claims are indefinite.  All claims that depend from the independent claims are invalid for the same reason.

For at least the above reasons, the above referenced Asserted '360 Patent Claims are invalid under 35 U.S.C. § 112, ¶ 2 due to indefiniteness.

| | | |
|---|---|---|
| 1 | Dated: April 30, 2012 | FENWICK & WEST LLP |
| 2 | | |
| 3 | | By: _*/s/ Jeffrey V. Lasker*_ |
| 4 | | Jeffrey V. Lasker |

CAROLYN CHANG (CSB NO. 217933)
cchang@fenwick.com
MEREDITH ERDMAN (CSB NO. 273126)
merdman@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041
Telephone:  (650) 988-8500
Facsimile:  (650) 938-5200

HEATHER MEWES (CSB NO. 203690)
hmewes@fenwick.com
JEFFREY V. LASKER (CSB NO. 246029)
jlasker@fenwick.com
JENNIFER J. JOHNSON (CSB NO. 252897)
jjjohnson@fenwick.com
FENWICK & WEST LLP
555 California Street, Suite 1200
San Francisco, CA  94104
Telephone:  (415) 875-2300
Facsimile:  (415) 281-1350

Attorneys for Defendant
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Dated: April 30, 2012   ARNOLD & PORTER LLP

By: _*/s/ Jennifer A. Sklenar*_
Jennifer A. Sklenar

Jennifer A. Sklenar (CSB NO. 200434)
ARNOLD & PORTER LLP
777 S. FIGUEROA STREET, 44TH FLOOR
Los Angeles, CA 90017
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199

Attorneys for Intervenor-Plaintiff
GENERAL ELECTRIC COMPANY