Jennifer A. Sklenar (SBN 200434)
jennifer.sklenar@aporter.com
**Arnold & Porter LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017-5744
Telephone:  213-243-4000
Facsimile:   213-243-4199

Attorneys for
GENERAL ELECTRIC COMPANY AND
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

Carolyn Chang (SBN 217933)
cchang@fenwick.com
**Fenwick & West LLP**
Silicon Valley Center
801 California Street
Mountain View, California 94041
Telephone:  650-988-8500
Facsimile:   650-938-5200

Attorneys for
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| NEUROGRAFIX; NEUROGRAPHY INSTITUTE MEDICAL ASSOCIATES, INC.; IMAGE-BASED SURGICENTER CORPORATION; and WASHINGTON RESEARCH FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant. | Case No. 2:11-cv-07591-MRP-RZ<br><br>**DECLARATION OF RONALD HOLTHUIZEN IN SUPPORT OF GENERAL ELECTRIC COMPANY'S AND THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT** |
| GENERAL ELECTRIC COMPANY,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>NEUROGRAFIX; NEUROGRAPHY INSTITUTE MEDICAL ASSOCIATES, INC.; IMAGE-BASED SURGICENTER CORPORATION; and WASHINGTON RESEARCH FOUNDATION,<br><br>Defendants. | |

Declaration of Ronald Holthuizen
Case No. 2:11-cv-07591-MRP-RZ

I, Ronald Holthuizen, declare:

1. I am an employee of Philips Medical Systems Nederland B.V. ("Philips"), one of the world leading manufacturers of medical systems and a supplier of Magnetic Resonance Imaging ("MRI") systems to the Regents of the University of California ("Regents"), the Defendant in this case. I make this Declaration based on my own personal knowledge, unless otherwise indicated, and could and would testify competently hereto.

2. At Philips, I currently hold a title of Magnetic Resonance ("MR") Imaging Scientist and am currently working in the Clinical Functionality group. That group is part of the Technology Development department of the Philips business unit MR. My current responsibilities include requirements management, design and development of FDA approved clinical functions. I have worked for Philips since 2001 in various positions relating to Philips MRI systems. During my employment at Philips, I have held titles of MR Image Post Processing Expert/Advanced Concept Development, Requirements Architect for MRI software and Team Leader for DTI software, among other titles.

3. I hold a M.Sc. degree in Computer Science from Technical University of Eindhoven (TU/e) with a Specialization in Visualization and Computer Graphics (2001). During these studies, I also participated in a supplemental study program to earn a Certificate of Technical Management, requiring over 600 hours of studies in design and control of corporate processes. In addition, I have attended various MRI conferences including ISMRM, CIRSE and ESMRMB from 2002-2011. Based on this education and the work experience described above, I have gained a substantial knowledge of Philips MRI systems.

4. As mentioned above, Philips is a supplier of MRI systems to the Regents. It is my understanding that certain of the Philips MRI systems sold to the Regents are alleged to infringe the patent-in-suit in this action. In this Declaration, I

provide information concerning the Philips MRI systems sold to the Regents at issue in this case.

**Philips MRI Systems Sold To Regents**

5.  Philips manufacturers various models of MRI systems, each with varying features. I have been informed that Philips sold three MRI systems to the Regents as detailed in the Table below:

| No. | MRI System | Hospital | Software | Date Purchased |
| --- | --- | --- | --- | --- |
| 1 | Intera 1.5T | University of California San Francisco | v2.6 | February 2, 2006 |
| 2 | Achieva 3.0T TX | University of California Irvine | v3.2 | April 26, 2010 |
| 3 | Achieva 3.0T | University of California Irvine | v2.6 | December 6, 2005 |

6.  In the Table above, the Intera 1.5T of item 1 has received a FreeWave upgrade that replaced existing RF components with a state-of-the-art FreeWave RF Platform and new software to provide the latest MRI functionality.  Going forward, I shall refer to all three MRI systems sold to the Regents as the "Achieva System" since the three systems' hardware and software behave identically for purposes of this Declaration.

7.  I further note that the three systems above sold to the Regents run a Philips proprietary software tool known as "Diffusion Tensor Imaging" or "DTI" software.  That software is released to the Regents during the course of their ownership of the MRI systems as part of a number of software "keys" known as

"Diffusion Tensor Imaging," "Diffusion Tensor Specialist," "DTI Specialist," or "Fibertrak Specialist."

### The Achieva System Hardware And Software

8.  The Achieva System is an MRI system having hardware and software components. The hardware components of the Achieva System include the Achieva Device (depicted below) that generates imaging data from a patient and sends that data to a specialized computer for processing and visualization.

9.  A sample Achieva 3.0 TX model is pictorially shown on the left below, and on the right with an architectural diagram of the various hardware components.




10. As mentioned above, the software component of the Achieva System is a proprietary software tool known as the DTI software developed by Philips and sold to the Regents with the Achieva Device (by licensing software "keys" that allow the Regents to run the DTI software on the specialized computer). Again, those software keys that all contain the DTI software include software known as "Diffusion Tensor Imaging," "Diffusion Tensor Specialist," or "Fibertrak Specialist."

11. The DTI software has various versions and options that customers can request. The Regents purchased the DTI software having the release versions

detailed in the Table above. These release versions do not materially differ from one another for purposes of the statements made in this Declaration.

12. The DTI software is integrated and sold as part of the specialized computer sold with the Achieva System. In fact, the specialized computer with the DTI software is an especially designed and tested medical device that is subject to regulation and approval by the Food and Drug Administration ("FDA"). Accordingly, once approved by the FDA, that specialized computer and software running on it cannot be modified without affecting the medical device status of this device.

13. The DTI software performs many functions as part of the Achieva System. For purposes of the issues related to this action, I will focus on the following functions of the DTI software—namely that the DTI software: (i) performs tensor, not vector, processing; and (ii) applies diffusion weighted gradients regardless of whether the axis of anisotropy is known or unknown.

### The DTI Software Performs Tensor, Not Vector, Processing

14. As discussed above, the Achieva System uses the DTI software.

15. I am readily familiar with the software Design Specifications ("Specifications") for the DTI software. In those Specifications, "(Diffusion) Tensor" is defined as a "Mathematical representation of diffusion in a single voxel, that can be used if at least 6 diffusion directions are known for this voxel." In fact, Appendix A of that same Specification sets forth a "Tensor Performance Memo" that details the process for "Loading (Computing) Volume of Tensors." Importantly no vector processing is used or described in the Specifications because tensor, not vector, processing is performed by the DTI software.

16. In sum, the DTI software does not perform any form of vector analysis to calculate anisotropy, although they do perform tensor analysis to calculate Fractional Anisotropy.

Declaration of Ronald Holthuizen
Case No. 2:11-cv-07591-MRP-RZ

**The DTI Software Applies Diffusion Weighted Gradients Regardless Of Whether The Axis Of Anisotropy Is Known Or Unknown**

17. The Achieva System has preset directions in which they apply diffusion gradients. It can generate gradients in up to 32 separate directions. The directions in which the Achieva System can apply these gradients does not depend on whether the axis of anisotropy of the target structure is known or unknown; rather, the directions are preprogrammed into the machine. While the number of directions of gradients can be chosen before the start of the pulse sequence, the directions themselves cannot. In fact, even if the axis of anisotropy of a particular target structure might be known in a particular instance, it is not possible to enter this information on the Achieva System.

18. In sum, the Achieva System is not dependent on knowing the axis of anisotropy. A user can provide a set of diffusion-sensitive directions, but the Achieva System has no process for indicating that the axis of diffusion-anisotropy is known or unknown.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 15 day of August, 2012 in Best, The Netherlands.

Ronald Holthuizen

Declaration of Ronald Holthuizen
Case No. 2:11-cv-07591-MRP-RZ
702926129